IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | CASE NO. 2:24-cr-200-RAH-JTA |
| ) | (WO) |
| JALEN DEVANTAE MCINTYRE ) | |
| ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is Defendant Jalen Devantae McIntyre's motion to suppress. (Doc. No. 33.) Defendant challenges the investigatory detention and resulting warrantless search of his vehicle on January 18, 2024, and moves to suppress the evidence obtained as a result. After due consideration of the parties' arguments, evidence and applicable law, the undersigned concludes the motion to suppress is due to be DENIED.

### I. PROCEDURAL HISTORY

A federal grand jury returned a three-count indictment against Defendant on June 4, 2024, charging him with possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Defendant entered a plea of not guilty during his arraignment. (Doc. No. 11.)

Defendant filed the instant motion on October 25, 2024. (Doc. No. 33.) The Government filed a response to the motion (Doc. No. 36), and Defendant filed a reply (Doc.

No. 38.) The undersigned conducted an evidentiary hearing on the motion on November 15, 2024. (Doc. No. 41, Suppression Hr'g Tr.) The motion is ripe for review.

## II.   FINDINGS OF FACT[1]

During the evidentiary hearing, the court heard testimony from two witnesses. (Doc. No. 41, Tr.) The Government presented the testimony of Rachel Mims Harmon, a detective with Clanton Police Department ("CPD"),[2] and Jeffery Brown, an investigator with the Chilton County Sheriff's Department.[3] Defendant did not present any testimony. The testimony and evidence adduced at the hearing[4] establish the following facts.

On January 18, 2024, between 4:00 p.m. and 5:00 p.m.,[5] Detective Harmon received from dispatch a description of a rolling domestic violence incident involving a black Nissan Altima and a blue Dodge Ram. Dispatch advised Detective Harmon that the Dodge Ram had made contact with the Nissan Altima and the female victim was afraid for her life.[6]

---

[1] The undersigned reaches findings of fact at a suppression hearing based on a preponderance of the evidence. *United States v. Beechum*, 582 F.2d 898, 913 n.16 (5th Cir. 1978) (citation omitted). The undersigned is mindful that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[2] Detective Harmon has been employed with CPD for approximately 2 years and has been in law enforcement for 12 years. (Doc. No. 41, Tr. at 5.)

[3] Deputy Brown has been employed with the Chilton County Sheriff's Department since December of 2016. (*Id*. at 54.)

[4] Detective Harmon's body camera recording was admitted into evidence and published during the hearing. (*See* Gov. Ex. 1.) No other video evidence was introduced.

[5] (Doc. No. 41, Tr. at 20.)

[6] (*Id*. at 13.)

Detective Harmon saw the vehicles at issue on the road,[7] initiated her lights and sirens, and conducted a traffic stop.[8] Both vehicles stopped and pulled into a parking lot. The Nissan Altima pulled in first, and the Dodge Ram pulled up parallel to the Altima. When Detective Harmon exited her vehicle, she could hear the female subject screaming from the Nissan Altima. Detective Harmon saw Defendant hanging out of the driver's side window of the Dodge Ram, yelling at the female subject.

Detective Harmon exited her vehicle and approached between the Dodge Ram and Nissan Altima. As she approached, Defendant rolled up his windows and exited his vehicle.[9] As Defendant slammed his vehicle's door, Detective Harmon smelled raw marijuana emanating from his vehicle.[10] Detective Harmon asked the female subject, later identified as Desiree Billingsley, to move to a different parking lot. Billingsley complied. Detective Harmon then asked Defendant for identification.[11] Defendant asserted he did not

---

[7] (Doc. No. 41, Tr. at 48.)

[8] Detective Harmon did not initiate her body camera until later in the traffic stop. These facts are established by her testimony.

[9] Detective Harmon testified that based on her training and experience, Defendant's behavior of exiting his vehicle was not normal behavior during a traffic stop. (*Id*. at 8.)

[10] (*See id*. at 9, 13, 16.) Detective Harmon testified she did not inform Defendant about the smell of marijuana coming from his vehicle when she first smelled it because she was the only officer on the scene and wanted to handle the domestic violence issue first. (*Id*. at 9, 13.) Although there is no video evidence to confirm Detective Harmon immediately smelled marijuana, the undersigned finds Detective Harmon to be credible. She testified in a thoughtful, candid, and consistent manner. Her testimony withstood scrutiny on cross examination, and there are no material discrepancies between her testimony and the evidentiary record.

[11] Detective Harmon's body camera footage begins at this point. (*See* Gov. Ex. 1 at 0:00–1:42.)

3

have identification on him, so he provided Detective Harmon with a social security number. At this point, Deputy Jeff Brown with the Chilton County Sherriff's Office arrived on scene. Detective Harmon asked Deputy Brown to stay with Defendant while she interviewed Billingsley about the domestic violence report. While standing with Defendant, Deputy Brown smelled the odor of raw marijuana.[12]

Detective Harmon interviewed Billingsley,[13] who informed her that Defendant had struck her and then rammed her vehicle while she was attempting to leave their residence with her children. Inside of Billingsley's car, there were two children. Billingsley informed Detective Harmon that she had active warrants through the City of Clanton. Detective Harmon told Billingsley she would need to fill out a report and returned to her patrol vehicle to retrieve one.[14]

While Detective Harmon was grabbing the report for Billingsley, she spoke to other officers at the scene. As she was in her patrol vehicle, an unidentified officer approached Detective Harmon and said, "I thought I smelled some weed on him."[15] Detective Harmon replied, "I keep catching a hint, but I don't know where it's coming from."[16] As Detective

---

[12] (Doc. No. 41, Tr. at 55.) The undersigned finds Deputy Brown to be credible. He testified in a thoughtful, candid, and consistent manner. His testimony withstood scrutiny on cross examination, and there are no material discrepancies between his testimony and the evidentiary record.

[13] The interview with Billingsley lasted approximately seven minutes. (*See* Gov. Ex. 1 at 2:01–9:09.)

[14] (*Id*. at 9:09–13:31.)

[15] (*Id*. at 10:36.)

[16] (*Id*. at 10:39.)

Harmon was returning with the report for Billingsley, she spoke to Corporal Darrell Bone, her direct supervisor. Detective Harmon asked Corporal Bone, "see if you smell weed on him, if you do, I'm going to search that truck."[17] Corporal Bone responded, "I smell weed on both of them."[18] Detective Harmon testified she asked Corporal Bone about the odor of marijuana for reassurance.

Detective Harmon returned to Billingsley and discussed the next steps.[19] Detective Harmon explained to Billingsley she did not have enough to arrest Defendant on the scene and Billingsley would have to fill out a report and sign a warrant for him to be arrested the next day. Detective Harmon told Billingsley her sergeant agreed there was not enough to arrest Defendant for domestic violence.[20] Detective Harmon further explained she would have to take Billingsley in for her warrants, and asked whether someone could pick up the children. Because Billingsley did not have a working phone, Detective Harmon went back to her patrol vehicle to get her personal cell phone for Billingsley to use.

While retrieving her phone, Detective Harmon spoke to Corporal Bone. Detective Harmon told Corporal Bone that she did not "have enough to take him from scene."[21] Corporal Bone responded, "oh, for domestic?"[22] Detective Harmon replied in the

---

[17] (*Id*. at 13:17.)

[18] (Gov. Ex. 1 at 13:20.)

[19] This conversation lasted approximately five minutes. (*See id*. at 13:31–18:26.)

[20] (*Id*. at 17:26–17:37.)

[21] (*Id*. at 19:33–19:36)

[22] (*Id*. at 19:36–19:39.)

affirmative.[23] Detective Harmon told Corporal Bone that she needed "to search it, but I gotta deal with her first."[24] Then, Detective Harmon passed her personal cell phone to another unidentified officer on scene to give to Billingsley.

Immediately after giving her cell phone to the officer, Detective Harmon informed Defendant that she smelled marijuana coming from his vehicle during their initial interaction and needed to search his vehicle.[25] Detective Harmon attempted to open his vehicle door, but the door was locked. When she asked Defendant to unlock the vehicle, he stated that he did not have his key.[26] Detective Harmon then conducted a pat down of Defendant for the key to unlock the vehicle. Instead of a key, she found a magazine loaded with ammunition.[27] Eventually, the officers unlocked Defendant's vehicle using a lockout kit. During the search of the vehicle, Detective Harmon found the vehicle keys on the passenger side floorboard, a synthetic version of MDMA, marijuana, and a firearm. In total, five grams of marijuana were collected from the vehicle. Detective Harmon testified that

---

[23] (*Id*. at 19:39.)

[24] (Gov. Ex. 1 at 19:46–19:48.)

[25] Detective Harmon testified that her intent was to come back to Defendant to investigate both the domestic violence incident and the marijuana at the same time. (Doc. No. 41, Tr. at 52–53.)

[26] (Gov. Ex. 1 at 20:26–20:30.)

[27] This was Detective Harmon's second pat down of Defendant. During the first pat down, she felt the magazine, but did not know what it was. (*See id*. at 26:03–26:15.)

in addition to the five grams of marijuana, there was shake, or very small leaves of marijuana, throughout the vehicle.[28]

### III.  DISCUSSION

A. <u>Motion to Suppress and Responses</u>

First, Defendant asserts that the search of his vehicle was unconstitutional because the stop was unlawfully prolonged beyond the scope of the investigatory stop for domestic violence. (Doc. No. 33 at 5.) Defendant avers the investigatory stop should have concluded approximately ten minutes into the encounter when Detective Harmon determined she did not have enough to arrest him for domestic violence. (*Id*.) Second, Defendant asserts there was not probable to search his vehicle because officers did not detect the odor of marijuana until after the purpose of the stop concluded. (*Id*. at 6.)

The Government responds the stop was not illegally prolonged because Detective Harmon had reasonable suspicion other criminal activity was afoot when she immediately smelled the odor of marijuana coming from the vehicle and Defendant was unable to provide identification. (Doc. No. 36 at 8.) The Government further contends probable cause existed to search the vehicle because Detective Harmon could smell the odor of marijuana coming from the truck. (*Id*. at 9–10.)

Defendant replies the body camera footage does not support the Government's contention that Detective Harmon immediately smelled marijuana. (Doc. No. 38 at 3.) He

---

[28] Detective Harmon had a K-9 dog in her vehicle but did not deploy the K-9 to conduct a drug sniff. Detective Harmon testified that using the K-9 was not procedure and was not needed in this case. (Doc. No. 41, Tr. at 38.)

argues Detective Harmon did not immediately smell the odor of marijuana because (1) she mentioned the odor of marijuana after she determined she did not have enough to arrest him for domestic violence; and (2) when she does mention the odor of marijuana, she did not affirm she detected it, but rather expresses uncertainty about the smell. (*Id.*) Defendant further argues that officers on scene did not diligently pursue the investigation into the odor of marijuana. (*Id.*) Defendant avers that if the alleged odor were potent, other officers on the scene should have conducted the search while Detective Harmon investigated the domestic violence incident. (*Id.*)

  B. <u>Governing Legal Principles</u>

"The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, effects, against unreasonable searches and seizures.'" *Whren v. United States*, 517 U.S. 806, 809 (1996). For purposes of the Fourth Amendment analysis, a seizure occurs "when the officer, using physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968). "A traffic stop for a suspected violation of the law is considered a seizure of the vehicle's occupant and must be conducted by the Fourth Amendment." *United States v. Braddy*, 11 F.4th 1298, 1308 (11th Cir. 2021). To comply with the Fourth Amendment, an officer must have reasonable suspicion to conduct the traffic stop. *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) ("All parties agree that to justify [a traffic stop], officers need only reasonable suspicion[.]" (quotation omitted)).

An encounter rises to the level of a brief seizure or investigatory detention if the officer has a reasonable, articulable suspicion that the individual has engaged in or is about

8

to engage in criminal activity. *Terry*, 392 U.S. at 24. "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Investigatory detentions must be "limited in scope and duration." *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022). The "scope of the stop 'must be carefully tailored to its underlying justification.'" *Id*. at 882 (quoting *Royer*, 460 U.S. at 500). The Fourth Amendment tolerates "certain unrelated investigations that d[o] not lengthen the roadside detention." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). However, an investigatory detention is "unlawfully prolonged when an officer, without reasonable suspicion, diverts from the stop's purpose and adds time to the stop in order to investigate other crimes." *Campbell*, 26 F.4th at 884.

Reasonable suspicion is determined from the totality of the circumstances, *United States v. Sokolow*, 490 U.S. 1, 8 (1989), and requires the officer to have "a particularized and objective basis for suspecting legal wrongdoing." *Braddy*, 11 F.4th at 1310–11 (internal quotation marks omitted). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification[.]" *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007); *see also United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004). In determining whether reasonable suspicion existed at the relevant time, the court considers whether reasonable suspicion existed objectively under the circumstances. *See United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006).

Turning to the Fourth Amendment's proscription of unreasonable searches, the fundamental right to be free from unreasonable searches is "generally preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer upon a showing of probable cause." *United States v. Tamari*, 454 F.3d 1259, 1261 (11th Cir. 2006). "There are, of course, exceptions to the general rule that a warrant must be secured before a search is undertaken, one of which is the automobile exception." *Id*. (citing *Maryland v. Dyson*, 527 U.S. 465, 466 (1999) (per curiam)). "If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more." *Dyson*, 527 U.S. at 467 (quoting *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)); *see also United States v. Mobley*, 808 F. App'x 899, 901 (11th Cir. 2020).

C. Analysis of Defendant's Motion to Suppress

1. The stop was not unlawfully prolonged.

An investigatory detention is unlawfully prolonged when the officer "(1) conduct[s] an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Campbell*, 26 F.4th at 884. "In determining whether reasonable suspicion is present, [a court] looks at the totality of the circumstances of [a] case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *Braddy*, 11 F.4th at 1310-11 (internal quotation marks omitted). The smell of "marijuana alone may provide a basis for reasonable suspicion for further investigation." *United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010); *see*

*also Bryan v. Spillman*, 217 F. App'x 882, 885 (11th Cir. 2007); *United States v. Garcia*, 592 F.2d at 259 (5th Cir. 1979).

Here, Detective Harmon initially stopped Defendant and Billingsly to investigate a report of domestic violence. Therefore, searching Defendant's vehicle for possible illicit drugs is "an unrelated inquiry aimed at investigating other crimes." *Campbell*, 26 F.4th at 884. Although Defendant contends the investigatory stop should have ended around ten minutes into the encounter, the video evidence and testimony establish Detective Harmon was investigating the domestic violence incident until she began the search of Defendant's vehicle. Even after determining she did not have enough to arrest Defendant for domestic violence, Detective Harmon still had to collect a report from Billingsley, explain the next steps to Billingsley, deal with Billingsley's outstanding warrants, and interview Defendant about the domestic violence incident. Nevertheless, the search of Defendant's vehicle did add time to the stop. Applying the standard in *Campbell* for an unlawfully prolonged stop, the only element at issue here is whether Detective Harmon had reasonable suspicion to conduct an unrelated inquiry.

Detective Harmon had reasonable suspicion to prolong the stop due to the odor of marijuana and Defendant's actions. Detective Harmon immediately smelled raw marijuana when Defendant exited his vehicle. Not only did Detective Harmon credibly testify to this, an unidentified officer and Corporal Bone confirmed they smelled the odor of marijuana in the body camera footage. Deputy Brown also testified he smelled the odor of marijuana. Although Detective Harmon asked Corporal Bone for confirmation that he smelled marijuana, this does not show the odor of marijuana was pretextual or failed to establish

11

reasonable suspicion. Rather, this shows Detective Harmon tried to conduct her investigation within the bounds of the Fourth Amendment by confirming she had a sufficient basis to search Defendant's vehicle. Further, Defendant rolled up his windows and exited his vehicle when Detective Harmon initially approached him. This action combined with the smell of marijuana gave Detective Harmon "a particularized and objective basis for suspecting legal wrongdoing." *Braddy*, 11 F.4th at 1310-11.

Defendant also argues the stop was unlawfully prolonged because the officers did not diligently conduct their investigation. Defendant argues that because other officers were on scene, they should have searched Defendant's truck while Detective Harmon was investigating the domestic violence incident. However, it is clear from the evidence and testimony that Detective Harmon was leading the investigation. Detective Harmon credibly testified that she is "hands-on" and likes to "do [her] own work." (Doc. No. 41, Tr. at 52.) Further, when Detective Harmon deals with domestic violence situations, she testified she likes to "talk to both parties" and "needed to talk to Defendant about his side of the domestic violence." (*Id*. at 44.) She planned to discuss the domestic violence incident and investigate the marijuana odor all at the same time. (*Id*. at 53.) Although other officers were on scene, Detective Harmon was leading the show, asking for the other officers' input, and delegating various tasks. During the entire encounter, Detective Harmon diligently investigated the domestic violence incident and the smell of marijuana.

Because Detective Harmon had reasonable suspicion to prolong the stop and worked diligently to investigate the domestic violence incident, the investigatory detention of Defendant was not unlawfully prolonged.

2. Probable cause existed to search Defendant's vehicle.

A warrantless search of an automobile is constitutional if (1) the automobile is readily mobile, and (2) there is probable cause that it contains contraband or evidence of a crime. *United States v. Lanzon*, 639 F.3d 1293, 1299–1300 (11th Cir. 2011). Probable cause exists "when there is a fair probability that contraband or evidence of a crime will be found in the vehicle under the totality of the circumstances." *Id*. at 1300 (citing *Tamari*, 454 F.3d at 1264). "Probable cause may arise when an officer, through training or experience, detects the smell of marijuana." *United States v. Smith*, 596 F. App'x 804, 807 (11th Cir. 2015) (citing *United States v. Tobin*, 923 F.2d 1506, 1512 (11th Cir. 1991) (en banc); *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982)).

It is undisputed that Defendant's vehicle was readily mobile. The only issue is whether Detective Harmon had probable cause to search Defendant's vehicle. As explained above, Detective Harmon credibly testified she immediately smelled raw marijuana coming from Defendant's vehicle. Other officers on the scene asserted they, too, smelled marijuana. The smell of the marijuana, combined with Defendant exiting his vehicle and rolling up his windows gave Detective Harmon probable cause that "contraband or evidence of a crime [would] be found in the vehicle under the totality of the circumstances." *Lanzon*, 639 F.3d at 1300.

Because Detective Harmon had probable cause, the search of Defendant's vehicle was permissible under the automobile exception to the warrant requirement. As such, the search of Defendant's vehicle did not violate the Fourth Amendment.

## IV. CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to suppress (Doc. No. 33) be DENIED. It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **December 20, 2024.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 6th day of December, 2024.

_____
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE